

FILED
10/5/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

Hanoi Barbaro Acosta

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

**RECEIVED**

SEP 02 2022

THOMAS G. BRUTON
CLERK, U.S DISTRICT COURT

vs.

Christopher Rivers, Warden

Unnamed Health Service Administrator

Walls, Correctional Officer

T. Mandeville, Correctional Officer

Wilson, Correctional Officer

Root, Correctional Officer

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: 21 CV 50194
(To be supplied by the Clerk of this Court)

Bergmann, M., RN

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

_____     **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
            **U.S. Code** (state, county, or municipal defendants)

__X___      **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
            **28 SECTION 1331 U.S. Code** (federal defendants)

_____     **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I.    **Plaintiff(s):**

A.    Name: _Hanoi Barbaro Acosta_

B.    List all aliases: _None_

C.    Prisoner identification number: _87406-008_

D.    Place of present confinement: _FCI Coleman-Low_

E.    Address: _P.O. Box 1031, Coleman, FL 33521_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.   **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.    Defendant: _Christopher Rivers_

       Title: _Warden_

       Place of Employment: _Federal Bureau of Prisons_

B.    Defendant: _Unnamed Health Service Administrator_

       Title: _Health Service Administrator_

       Place of Employment: _Administrative United States Penitentiary_

C.    Defendant: _Walls_

       Title: _Correctional Officer_

       Place of Employment: _Administrative United States Penitentiary_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                                          Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

II. Defendant(s):

D. Defendant: T. Mandeville
   Title: Correctional Officer
   Place of Employment = Administrative U.S. Penitentiary

E. Defendant: Wilson
   Title: Correctional Officer
   Place of Employment = Administrative U.S. Penitentiary

F. Defendant: Root
   Title: Correctional Officer
   Place of Employment: Administrative U.S. Penitentiary

G. Defendant: M. Bergmann
   Title: Registered Nurse
   Place of Employment: Administrative U.S. Penitentiary

2 A.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: Acosta v. Maricopa County Sheriff's Office, et al., No. CV-09-467-SRB (MEA)

B. Approximate date of filing lawsuit: May 1, 2009

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: None

D. List all defendants: Joseph M. Arpaio ; Unknown Nicholas; Daniel B. Durand.

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): USDC - District of Arizona (Phoenix Division)

F. Name of judge to whom case was assigned: Susan R. Bolton

G. Basic claim made: Unauthorized digital cavity search was 4th Amendment violation.

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Claim barred by PLRA because no physical injury. Dismissal affirmed on appeal.

I. Approximate date of disposition: November 23, 2011

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. All lawsuits:

A. Name of case and docket number: Acosta v. JT Shartle, et al., No. CV-18-216-TUC-RM.

B. Approximate date of filing lawsuit: February 23, 2019.

C. List all plaintiffs: None.

D. List all defendants: United States of America; JT Shartle; SIS Technician Gallion; SIS Technician Madrid; DHO Ciufo; AW Brilo; and D. Miller.

E. Court in which the lawsuit was filed: USDC-District of Arizona (Tucson Division).

F. Name of judge to whom case was assigned: Rosemary Martinez.

G. Basic claim made: SIS fabricated an incident report to send Acosta to the SMU; USA liable food poisoning.

H. Disposition of case: USA settled.

I. Approximate date of disposition: April 2, 2019

3A.

III. <u>All lawsuits</u>:

A. Name of case and docket number: In re BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, Case No. 20-10343.

B. Approximate date of filing lawsuit: Unknown.

C. List all plaintiffs: Unknown (Class Action).

D. List all defendants: Boy Scouts of America; Delaware BSA, LLC.

E. Court in which the lawsuit was filed: United States Bankruptcy Court (District of Delaware).

F. Name of judge to whom case was assigned: Silverstein.

G. Basic claim made: Sexual abuse survivor claim.

H. Disposition of the case: Settled.

I. Approximate date of disposition: Unknown.

3B.

III. All lawsuits:

A. Name of case and docket number: Acosta v. United States of America, No. 22-cv-50156

B. Approximate date of filing lawsuit: May 17, 2022

C. List of all plaintiffs: None.

D. List all defendants: United States of America.

E. Court in which the lawsuit was filed: USDC-District of Illinois (Western Division).

F. Name of judge to whom case was assigned: Philip G. Reinhard.

G. Basic claim made: assault and battery, false imprisonment, conspiracy.

H. Disposition of case: Pending.

I. Approximate date of disposition: N/A.

3C.

III. All lawsuits:

A. Name of case and docket number: Acosta v. United States of America, No. 22 cv 50199.

B. Approximate date of filing lawsuit: June , 2022

C. List all plaintiffs: None.

D. List all defendants: United States of America.

E. Court in which the lawsuit was filed: USDC-Northern district of Illinois (Western Division).

F. Name of judge to whom case was assigned: Philip G. Reinhard.

G. Basic claim made: BOP liable to plaintiff for negligence leading to COVID infection of plaintiff.

H. Disposition of case: Pending

I. Approximate date of disposition: N/A.

3D.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.     **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Introduction

This is a civil rights action filed by Plaintiff Hanoi Barbaro Acosta ("Acosta"), a federal prisoner, for damages, and declaratory relief alleging a violation of the Eighth Amendment to the United States Constitution, based on the named and unnamed defendant(s) deliberate indifference to his serious medical needs; and the conspiracy thereof. Namely, Plaintiff alleges that while incarcerated at the Administrative United States Penitentiary - Thomson ("AUSP Thomson"), in Thomson, Illinois, he was infected with SARS-CoV-2, the virus that causes COVID-19, due to the Federal Bureau of Prisons' ("BOP") poor management of the pandemic, the named and unnamed defendant(s) deliberately pepper sprayed him at the height of his infection, and then provided woefully inadequate medical care for his serious medical needs.

4                                              Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

<u>Exhaustion of Administrative Remedies</u>

1. Acosta has exhausted his administrative remedies by completing the BOP's grievance process.

<u>Serious Medical Need</u>

2. On November 13, 2020, Acosta began suffering from difficulty breathing, aching bones, body aches, vomiting, and loose stools. At approximately 7:30pm Acosta fell out in his cell, and his cellmate, amongst other inmates, got the attention of prison staff whom contacted medical personnel. Nurse J. Simcox came to Acosta's cell and checked his temperature, which revealed that he had a fever of 101.5 degrees. Nurse Simcox conducted a COVID test, which had a positive result. The nurse gave Acosta Acetaminophen for the fever, and ordered him moved to quarantine in the isolation unit.

3. By November 14, 2020, the next day, Acosta's condition worsened. His symptoms included labored breathing, 103 degree fever, body aches, nausea, and vomiting. Acosta informed Defendant M. Bergmann that he needed to see a doctor, and she told him that nothing could be done for him and that he would have to "ride it out."

<u>Deliberate Indifference to Serious Medical Need By Prison Gaurds</u>

4. On November 14, 2020, at approximately 1:07pm, Correctional Officer ("C/o") Root came to Acosta's

4A.

assigned cell and ordered him to "cuff up." Acosta asked him why, and Defendant Root told him that he did not know. Acosta told C/o Root he was not taking a cellmate because he had a fever of over 103 degrees, and was otherwise to weak to defend himself should it be required. Defendant Walls came to Acosta's door and assured him that he was not getting a cellmate, but that he was going to medical to be examined instead. Because Acosta was placed in quarantine for COVID-19 the night before, he believed C/o Walls and cuffed up.

5.    When the C/o's rolled Acosta's door, however, he was surprised to see inmate Ruben Barrera, an inmate about whom prison staff had previously been informed should not be housed with Acosta, being led to his assigned cell. Acosta immediately informed the C/o's at his door - Walls and Root - that he could not be housed with Barrera, because Barrera was his enemy. Barrera also made the protest that Acosta was his enemy. Moreover, Defendants Walls, Root and Wilson possessed first hand knowledge of the enemity between Acosta and Barrera, because the inmates submitted requests to be separated from eachother on the basis of an imminent threat of an altercation to these very C/o's just days before.

6.    Barrera physically attempted to refuse to come into the cell. But C/o Butterfield told him, "if you don't go in there I'm going to slam you on your face spic." C/o Butterfield and C/o Wilson had an interest in forcing Barrera into the cell, because they had

4B.

a monetary bet that the "mexican gets his ass kicked." Barrera reluctantly entered the cell.

7. The C/o's rolled the cell door closed, and ordered the inmates to fight. The inmates pretended to fight at the insistence of the C/o's. Without warning Defendant T. Mandeville deliberately issued an excessive amount of O.C. pepper spray directly into the faces of the sick inmates, and was indifferent to their serious medical needs. Contrary to Program Statement 5566.06, Use of Force and Application of Restraints, which states "chemical agents will be used as specified and, to the extent practicable, only after a review of the inmate's medical file...." Id.

8. With his lungs burning, and gasping for air like a fish out of water, Acosta immediately submitted to hand restraints, begging the C/o's to let him out of the cell because he could not breathe, and certain he was going to die. Instead, Acosta was re-cuffed and taken to a hot shower to decontaminate. The hot water activated the pepper spray. It caused so much pain that Acosta could not stand it. The pepper spray made the hot water feel like boiling water on Acosta's skin. Worse still, the water made the pepper spray run from head to toe, including Acosta's genitals and anus. And because Acosta could not stand the hot water, he burned for over 72hrs. Moreover, Acosta was never taken outside for fresh air or offerred soap to decontaminate contrary to Program Statement, 5576.06, Oleoresin Capsicum (OC) Aerosol Spray

4C.

which states, "Decontamination procedures include fresh air and water rinsing...the person shall be allowed to wash all areas affected by the agent with soap and water..." *Id.*

9.   The defendant correctional officers knew Acosta was placed in the quarantine isolation unit the night before because he had tested positive for COVID-19. In fact, they were quarantining inmate Barrera, because he too had been exposed to COVID-19. The fact that SARS-CoV-2 is a respiratory illness that had, at that point, killed hundreds of thousands of Americans was common knowledge. Thus, its reasonable to presume that the C/o's were aware of the substantial risk of harm that pepper spray posed to Acosta. And considering that the C/o's created the entire incident, and both Acosta and Barrera informed the C/o's that they could not be housed together, the C/o's also failed to take the reasonable steps outlined in Program Statement 5566.06, *Use of Force and Application of Restraints* (i.e., review Acosta's medical file) to prevent from pepper spraying Acosta. Moreover, pepper spray is not a known medical treatment for a coronavirus infection - quite the contrary. Therefore, Acosta received inadequate medical treatment for his COVID-19 infection at AUSP Thomson, because the C/o's were deliberately indifferent to his serious medical needs.

4D.

## Deliberate Indifference to Serious Medical Need By Nurse Bergmann

10.   On November 14, 2020, at approximately 1:38 p.m., Acosta was taken to see Nurse Bergmann after being pepper sprayed. The nurse had to decontaminate Acosta's eyes, because the hot shower only served to exacerbate the effects of the pepper spray. During the medical assessment Acosta complained to the nurse about his difficulties breathing. The nurse did nothing more than a staged assessment for the camera, and pronounced Acosta medically stable. Afterward, Acosta was returned to his cell in the isolation unit. Nurse Bergmann provided no other medical assistance to ensure that Acosta's condition, which was a COVID patient whom had just been pepper sprayed, did not devolve into something more serious. Nurse Bergmann's actions were more than medical malpractice or just her excercise of professional medical judgment or opinion. Nurse Bergmann was covering for the C/O's and thereby conspiring with them.

11.   For example, Nurse Bergmann created a medical record that belies or omits facts pertinent to what really occurred on November 14, 2020. In her assessment record Nurse Bergmann writes: "Inmate was adequately decontaminated at the beginning of the medical assessment." However, that was not true because Acosta was having trouble breathing and he was not taken out for fresh air. Nurse Bergmann writes: "Vital signs stable." That is also not true. Nurse Bergmann just recorded a 100.5 degree fever

4E.

and knew, as Acosta's primary medical provider, that he was severely ill from COVID-19 and that being pepper sprayed could only worsen his condition. She writes that "No respiratory compromise noted." But it wasn't noted because she did not note it. Finally, Nurse Bergmann writes that "when asked if the inmate had any injuries he stated 'I can't tell yet.'" Other than being able to not breathe, Acosta could not tell, at that moment, what injuries he may have sufferred internally. It was Nurse Bergmann's job to provide him with adequate health care to determine that, and to make sure Acosta was okay. Instead she did nothing to ensure that. And by the grace of God Acosta did not lose his life, and not by any professional assistance rendered by Nurse Bergmann. In fact, everytime he asked to see a doctor or complained about his breathing Nurse Bergmann would just tell Acosta the same thing— "You gotta ride it out."

<u>Deliberate Indifference to Serious Medical Need By Warden Rivers and Unnamed Health Service Administrator</u>

12.    According to Program Statement 5566.06, CN-1, <u>Use of Force and Application of Restraints</u>, a use of force, like the one Acosta experienced, generally must be videotaped and when it is videotaped, the warden must forward a copy of the video to the "Regional Director within four working days of the incident." <u>Id.</u>

13.    Acosta isn't certain at what point the C/o's

4F.

started videotaping the incident, but by the time he was being medically assessed the camera was present. Thus, the warden was informed that Acosta, a COVID-19 patient under his watch, had been pepper sprayed. Warden Rivers did nothing to en- sure that Acosta's condition did not worsen. Acosta was not even allowed to see a prison doctor— let alone sent out to the hospital to see a real doctor. Therefore, Warden Rivers failed to act despite his knowledge of a substantial risk of serious harm to Acosta's health and safety in violation of federal law.

14.    Acosta was only issued Acetaminophen to treat his COVID-19 infection—and that was a full day after his symptoms began. He was denied access to any other medical treatments, to include evaluations by medical doctors. This was the policy of the De- fendants Warden Rivers and Unnamed Health Service Administrator. The decision to deny Acosta any other treatment after being pepper sprayed on November 14, 2020 was made by both of these supervisors. There, fore, they turned a blind eye to Acosta's serious medical needs.

### Claims for Relief

15.    The actions of correctional officers; T. Mande- ville, Walls, Wilson, and Root set forth in paragraphs 4-9 constitute deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amend- ment to the United States Constitution. Defendants T. Mandeville, Walls, Wilson, and Root are liable to the Plaintiff for these unlawful actions in violation

4G.

of the Constitution.

16.    The actions of correctional officers; T. Mande-ville, Walls, Wilson, and Root; and nurse M. Berg-mann set forth in paragraphs 3, 4-9, 10-11 consti-tutes a conspiracy to be deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. Defendants T. Mandeville, Walls, Wilson, Root, and M. Bergmann are liable to the Plaintiff for these un-lawful actions in violation of the Constitution.

17.    The actions of nurse M. Bergmann set forth in paragraphs 4, 10-11 constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. Defendant M. Bergmann is liable to the Plaintiff for these unlawful actions in violation of the Constitution.

18.    The actions of warden Christopher Rivers and Unnamed Health Service Administrator set forth in paragraphs 13-14 constitute deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. Defendants Christopher Rivers and Unnamed Health Service Administrator are liable to the Plaintiff for these unlawful actions in violation of the Constitution.

4H.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## Relief Requested

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. the actions of the Defendants constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

B. Award compensatory damages in the amount found by the jury, but in no event less than $2,600,000.00.

C. Award punitive damages in the amount found by the jury, but in no event less than $150,000.00 against each defendant.

5

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

V.     **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

*I also request an appointment of counsel and an expert witness to present this meritorious medical case.*

VI.     The plaintiff demands that the case be tried by a jury.  ☒ YES    ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _21 st_ day of _August_, 20_22_

_Hanoi Acosta_

(Signature of plaintiff or plaintiffs)

_Hanoi Acosta_
(Print name)

_874066-008_
(I.D. Number)
_Federal Correctional Complex Coleman_

_FCI Coleman Low, P.O. Box 1031_

_Coleman, FL 33521_
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]